**Berton DULCE, Plaintiff–Appellant,**

v.

**Jules DULCE, Defendant–Appellee,**

**Docket No. 97–9289.**

United States Court of Appeals,
Second Circuit.

Argued: Dec. 13, 1999

Decided: Nov. 21, 2000

Peter D. Greene (Jonathan M. Jacobson, Stephen M. Baldini, on the brief) Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York, N.Y., for Plaintiff–Appellant.

Before: FEINBERG, CARDAMONE, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Plaintiff Berton Dulce obtained a judgment against defendant Jules Dulce in the District Court for the Eastern District of New York (Nickerson, *J.*). Before the judgment was satisfied in full, the defendant died. The person named in the will as the "personal representative" designated to administer the estate (the "executor") refused to file the will for probate or to give the plaintiff information as to the defendant's property. The plaintiff sought the district court's help in enforcing the judgment. He moved for an order (1) declaring his right to a share in the estate, and (2) directing the executor to (a) produce the will, (b) file it for probate, and (c) reveal information concerning the defendant's estate. The district court denied the motion on the ground of the probate exception to federal court jurisdiction. In our view, the probate exception does not bar the grant of such relief. We vacate the order and remand.

## BACKGROUND

In April 1983, Berton Dulce filed a diversity action[1] against his uncle, Jules Dulce, in the United States District Court for the Eastern District of New York, alleging breach of an oral agreement. The complaint alleged that the plaintiff had deeded a house to the defendant under an oral agreement that the defendant would hold title in trust for the plaintiff. The defendant breached the agreement by selling the house and refusing to give the plaintiff the sale proceeds. On November 25, 1985, the district court granted summary judgment to the plaintiff. Judgment was entered in the amount of $44,000.

The plaintiff had difficulty enforcing the judgment and sought the help of the district court. On August 23, 1990, the court ordered the defendant to pay the plaintiff the total amount deposited in two of the defendant's bank accounts, which was later determined to be $12,800.86. On November 7, 1990, the court further ordered the defendant to pay monthly installments of $600, until the judgment was fully satisfied. The defendant continued to be delinquent, however, and the court entered another order on May 7, 1991, directing him to resume paying the monthly installments until the outstanding judgment of $31,-199.14, plus pre- and post-judgment interest of $68,822.20 was satisfied. After complying with the court's orders for a time, the defendant once again ceased making payments, and the plaintiff moved to hold him in contempt. By order of January 1, 1993, the court directed the defendant to show cause why he should not be held in contempt, and the defendant resumed making payments.

In July 1995, the defendant died in Schenectady County, New York. The plaintiff wrote to the court on February 2, 1996, advising of the death and of the fact that a balance of $67,000 remained to be paid. The plaintiff stated in his letter that he had received a copy of the defendant's will from Nathan Jerry Maltz, the "personal representative" named in the will, and that the will specified that all remaining assets were to be distributed "without waiting the time prescribed by law" and "without authorization or confirmation of court." The plaintiff alleged that he had asked Maltz several times to file the will for probate and to identify the persons from whom he received the will, but that Maltz repeatedly refused. In addition, the plaintiff asserted, Maltz told him there were no funds, assets, or property remaining in the defendant's estate, but Maltz refused to show documentation supporting this allegation.

The plaintiff asked the court to issue an order (1) declaring that he is "entitled to receive $67,000 from the [defendant's] estate," and (2) directing Maltz to (a) pro-

---

1. At the time of filing, the plaintiff was domiciled in Massachusetts and the defendant in New York.

duce the will before the court, (b) file the will for probate, and (c) name the person or persons who informed him of the defendant's death and from whom he obtained the will.[2] The court denied the plaintiff's requests on the ground that such relief was prohibited by the probate exception to federal court jurisdiction. As to the first request, the court held that it could not "declare ... that plaintiff is 'entitled' to a particular sum," because "[t]he probate court will have to determine the priority of any competing claims." Likewise, ordering that the will be filed for probate "would amount to administration of that estate, a matter clearly beyond the jurisdiction of this court." The court did not specifically mention the plaintiff's other requests seeking discovery.

The plaintiff then moved for reconsideration of the order denying relief. The motion was made on February 15, 1997, more than eighteen months after the defendant's death. Though the plaintiff essentially reiterated his requests, he somewhat modified the first by asking for a general "declar[ation of] ... [his] right to share in the estate," rather than a specification of the amount to which he is entitled. By order of August 27, 1997, the court denied the plaintiff's motion, holding that, although it had "repeatedly declared that the plaintiff has a claim against defendant's estate for that portion of the judgment and interest that remains unpaid ... [t]he court lacks jurisdiction to do anything more." *Dulce v. Dulce*, No. 84 CV 1934, 1997 WL 642329, at *1 (E.D.N.Y. Aug.27, 1997).

The plaintiff appeals, contending that the relief he requested is not barred by the probate exception to federal court jurisdiction.[3]

2. The plaintiff also asked the district court to appoint counsel to help him collect the judgment. Judge Nickerson denied this request, along with the others. The plaintiff does not appeal this denial, however, because this court appointed counsel for his appeal.

## DISCUSSION

We believe the court was mistaken in its belief that the probate exception to federal court jurisdiction prohibited the grant of the relief plaintiff sought. *See Dulce*, 1997 WL 642329, at *1. In our view, the scope of the probate exception is not as broad as the district court believed it to be.

The probate exception establishes that "a federal court has no jurisdiction to probate a will or administer an estate." *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946); *see also Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1071 (2d Cir.1990). The Supreme Court has interpreted it to mean that "federal courts ... have jurisdiction to entertain suits in favor of creditors, ... and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Markham*, 326 U.S. at 494, 66 S.Ct. 296 (internal quotations omitted); *see also Ashton*, 918 F.2d at 1071–72 (same).

In our view, the relief sought by the plaintiff did not exceed the proper bounds of a federal court's jurisdiction. Aside from the request for a declaration of plaintiff's right to share in the estate, to which we later return, the order the plaintiff sought would have required Maltz to produce the will for inspection, to file it for probate, and to disclose information as to how he learned of the defendant's death and received the will. The plaintiff did not ask the district court to probate the defendant's will,[4] administer the estate, or in

3. This court invited Maltz to respond, but we received no answer.

4. In his initial letter to the district court, the plaintiff requested that "the last will and testament of the judgment debtor be ordered produced and filed for probate." In his February 15, 1997 letter requesting reconsidera-

any way interfere with state probate proceedings. We therefore see no reason why such relief would run afoul of the probate exception.

■ As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to "vindicate its authority, and effectuate its decrees." *Peacock v. Thomas,* 516 U.S. 349, 354, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) (internal quotations omitted). This includes proceedings to enforce the judgment. *See* 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3523, at 89 (2d ed. 1984) ("Wright & Miller") (Ancillary jurisdiction "include[s] those acts that the federal court must take in order properly to carry out its judgment on a matter as to which it has jurisdiction"). Without ancillary jurisdiction to enforce judgments, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Peacock,* 516 U.S. at 356, 116 S.Ct. 862 (internal quotations omitted). As a result of its entry of judgment for the plaintiff, the district court possessed ancillary jurisdiction to enforce the judgment through supplementary proceedings.

State law generally supplies procedures for the enforcement of a federal court judgment. *See* Fed.R.Civ.P. 69(a) ("The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held...."). With respect to a judgment creditor's efforts to enforce a money judgment after the debtor has died, New York Civil Practice Law and Rules § 5208 provides that during the

eighteen-month period following the judgment debtor's death, the creditor is not permitted to execute on the judgment by having the authorities "lev[y] upon any debt owed to [the debtor] or any property in which he has an interest, nor shall any other enforcement procedure be undertaken with respect to such debt or property," unless the Surrogate's court that has probated the will grants leave. N.Y. C.P.L.R. § 5208. If during this eighteen-month period an executor or administrator is not appointed by the Surrogate's Court to administer the debtor's estate, the judgment creditor may thereafter move "any court from which the execution could issue or in which the enforcement procedure could be commenced" to so proceed. *Id.*

■ New York Civil Practice Law and Rules sections 5223 and 5224 establish discovery procedures that may be used by a judgment creditor seeking to obtain information necessary to enforce a judgment. Section 5223 provides: "At any time before a judgment is satisfied ..., the judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment, by serving upon any person a subpoena...." N.Y. C.P.L.R. § 5223. Section 5224 provides for (1) a "subpoena requiring attendance for the taking of a deposition," (2) a "subpoena duces tecum requiring the production of books and papers," and (3) an "information subpoena" requiring written answers to set of written questions. N.Y. C.P.L.R. § 5224. Employing the procedures established in sections 5223 and 5224, made applicable in a federal court by Fed.R.Civ.P. 69(a), it seems clear the plaintiff may subpoena Maltz (and anyone else likely to have relevant knowledge) to give a full accounting of the assets in the estate from the time of

tion of the order denying relief, the plaintiff asked the court to "compel production of the defendant debtor's will by the estate's executor, Mr. Jerry Maltz ... so that the document may be duly probated." While the motion did not state in which court Maltz should be

directed to file the will for probate, there is no reason to assume that the plaintiff was seeking to have it filed in the district court, rather than in the appropriate court under New York state law.

the defendant's death to the present.[5] The scope of such inquiry would include a subpoena requiring the production of the defendant's will for inspection, as well as the identification of the persons who notified Maltz of the defendant's death and provided him with the will, as such demands are reasonably designed to produce information relevant to the existence of assets available to satisfy the judgment and are therefore within the scope of sections 5223 and 5224.

Furthermore, Section 1401 of the New York Surrogate's Court Procedure Act establishes that, if the Surrogate's Court determines that "there is reasonable ground to believe that any person has knowledge of the whereabouts or destruction of a will," it may order that person to produce the will and file it in the Surrogate's Court for probate. N.Y. Surr. Ct. Proc. Act § 1401. One of the categories of people authorized to petition the court for this purpose is the decedent's creditors. *See* N.Y. Surr. Ct. Proc. Act § 1402(1)(b). The holding of *In re Malloy's Estate*, 278 N.Y. 429, 17 N.E.2d 108, 109 (1938), that the New York Supreme Court has concurrent jurisdiction with the Surrogate's Court over the "probate [of] a will, and . . . many other matters," implies that the Supreme Court shares the power to order at the instance of a creditor, that the will be produced and filed for probate in the Surrogate's Court.

Given these rules, we can see no reason why the district court would be barred, on the application of a judgment creditor, from ordering a person in possession of the decedent's will to offer it for probate to the appropriate state court. The entry of such an order by a court of general jurisdiction is contemplated by state law. Such an order would in no way interfere with a state's exercise of control over a decedent's assets so as to administer the estate. To the contrary, the purpose of the order would be to enable the appropriate state court to discharge its responsibilities notwithstanding the efforts of the person in possession of the decedent's will to conceal it and distribute the decedent's assets without submitting to probate court review. Furthermore, the district court's entry of such an order would not compel any state court to act. The state court would remain free to reject the proffer of the will for probate for any reason. The sole effect of the order would be to compel the holder of the decedent's will to place the will before the state court, thus enabling that court to administer the estate. Such an order would not be an interference with the state court's probate jurisdiction.

■ Although the answer is somewhat less clear with respect to the plaintiff's application for a declaration of his "right to share in the estate," we believe this somewhat ambiguous demand could properly be construed to seek relief that would not be barred by the probate exception.

**5.** Subsequent proceedings necessary to enforce a judgment may be held involving persons not party to the original lawsuit. *See Peacock*, 516 U.S. at 356, 116 S.Ct. 862. The primary limit on the exercise of such ancillary jurisdiction is that it may not be used "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357, 116 S.Ct. 862. Under New York law, when a judgment debtor dies, the creditor's right to enforce the judgment against the debtor is automatically translated into a right to file a claim with the Surrogate's Court probating the will or, as discussed above, to execute directly on the property of the deceased (after eighteen months have passed from the time of death). *See* N.Y. C.P.L.R. § 5208, *Legislative Studies & Reports* (noting that the traditional common law practice of requiring the judgment creditor to obtain a writ of scire facias "revivifying" the judgment as one against the estate was abrogated by statute in the mid-nineteenth century). Because the judgment debtor's death converts the creditor's right to enforce against the debtor into a right to enforce against his estate or to execute on his property, the exercise of ancillary jurisdiction for these purposes would not impose liability for the judgment on third parties who are not already liable for the judgment.

The exception has been construed rather narrowly. In *Markham v. Allen,* 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946), the Supreme Court held that the United States Alien Property Custodian, claiming entitlement in the place of the designated legatees (who were disqualified as enemy aliens), was entitled to receive the net assets of the estate (after payment of debts, taxes and expenses of administration) in preference to persons claiming the status of heirs at law. The Supreme Court found that the judgment did not run afoul of the probate exception because its "effect ... was to leave undisturbed the orderly administration of decedent's estate in the state probate court and to decree petitioner's right in the property to be distributed after its administration." *Id.* at 495, 66 S.Ct. 296. The Court stated further that

> while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

*Id.* at 494, 66 S.Ct. 296 (internal citations omitted).

In *Waterman v. Canal–Louisiana Bank & Trust Co.,* 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80 (1909), the Supreme Court explained that

> [a] citizen of another state may establish a debt against the estate [through an action in federal court]. But the debt thus established must take its place and share of the estate as administered by the probate court; and it cannot be enforced by process directly against the property of the decedent. In like manner, a distributee, citizen of another state, may establish his right to a share in the estate, and enforce such adjudication against the administrator personal-

ly, or his sureties; or against any other parties subject to liability, or in any other way which does not disturb the possession of the property by the state court.

*Id.* at 44, 30 S.Ct. 10 (internal quotations and citations omitted); *see also McClellan v. Carland,* 217 U.S. 268, 281, 30 S.Ct. 501, 54 L.Ed. 762 (1910) (holding that chancery jurisdiction of the federal courts to entertain suits between citizens of different states to determine interests in estates was not nullified by state legislation creating state courts of probate); *Beach v. Rome Trust Co.,* 269 F.2d 367 (2d Cir. 1959) (affirming on grounds of probate exception the district court's dismissal of application for an accounting as to estate's assets, but asserting the district court's power, notwithstanding the exception, to declare interests in certain estate property where no distribution was sought and prosecution of the claim would not interfere with the jurisdiction of the Surrogate).

The plaintiff's amended application did not seek the distribution of any assets. Nor did it seek a declaration of his entitlement to receive any particular sum from the estate. All it sought was a declaration of his "right to share in the estate," without specification of amount. While the scope of the demand is ambiguous, it could be construed to seek nothing more that the court's declaration that the judgment entered against Jules Dulce was also a judgment against Jules Dulce's estate—i.e., that the plaintiff was a judgment creditor of the estate, and in that sense entitled to "share in the estate" in an indeterminate amount limited by the amount of the judgment. Whether the plaintiff's share would actually result in his receipt of money, and how much, would depend on the probate court's findings as to the extent of the estate's assets and the extent of the competing claims with varying priorities. A simple declaration that the plaintiff is a judgment creditor of the estate and in that sense entitled to share in the estate in the event it has assets eligible to satisfy his

judgment would have no capacity to interfere with the state probate court's administration of the estate or discharge of its duties. *See* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, § 3610, at 493 ("It is generally not considered an interference with state proceedings for a federal court to declare whether a party has the right to share in an estate.").

We conclude that the district court could have granted the relief sought by the plaintiff without violating the probate exception.

## CONCLUSION

The district court's order declining to entertain the plaintiff's application for relief on the ground of the probate exception is hereby vacated. We remand for further proceedings.[6]

---

6. We recommend to the district court that it either continue the appointment of counsel for plaintiff appointed for the appeal, if counsel is willing, or appoint new counsel.