Eliseo Morales GARCÍA and Maribel Mena Meléndez, Debtors.

Noreen Wiscovitch Rentas, Chapter 7 Trustee, Plaintiff–Appellee,

v.

María Mercedes Molina González and Manuel A. González Alvarado, Defendants–Appellants.

Eliseo Morales García and Maribel Mena Meléndez, Debtors.

Noreen Wiscovitch Rentas, Chapter 7 Trustee, Plaintiff–Appellee,

v.

Sandra E. Molina González and Josefa M. González Vega, Defendants–Appellants.

BAP Nos. PR 12–093, PR 13–011. Bankruptcy No. 04–12461–ESL. Adversary No. 10–00170–ESL.

United States Bankruptcy Appellate Panel of the First Circuit.

Filed March 17, 2014.

María Mercedes Molina González and Manuel A. González Alvarado, Pro Se.[1]

Francisco J. Amundaray–Rodríguez, Esq., and María E. Villares–Señeriz, Esq., on brief, San Juan, PR, for Defendants–Appellants, Sandra E. Molina–González and Josefa M. González–Vega.

Enrique N. Vela Colon, Esq., on brief, San Juan, PR, for Appellee, Noreen Wiscovitch Rentas, Chapter 7 Trustee.

BAILEY, Bankruptcy Judge.

■ These appeals arise out of an adversary proceeding wherein Noreen Wiscovitch Rentas, chapter 7 trustee (the "trustee"), sought (1) a determination that the debtors had a 78.54 percent interest in the sale proceeds of certain properties of a probate estate, and (2) an order directing the turnover of such funds, which have been consigned to the probate court. The bankruptcy court entered summary judgment in favor of the trustee, and two sets of defendants, Maria Mercedes Molina González and Manuel A. González Alvarado ("Appellants María and Manuel"), and Sandra E. Molina–González and Josefa M. González–Vega ("Appellants Sandra and Josefa"), appealed. For the reasons set forth below, we **REVERSE** the bankruptcy court's judgment directing the Clerk of the Puerto Rico Court of First Instance, Superior Court of Bayamón (the "CFI"),[2]

1. Although Attorney Wilfredo González Claudio filed a brief on behalf of Defendants–Appellants, Maria Mercedes Molina González and Manuel A. González Alvarado, the Panel subsequently disqualified him from representing the appellants in this appeal, and he did not appear at oral argument.

2. The Puerto Rico Superior Court is a "Court of First Instance" and a court of "original

to turn over the proceeds, and we **RE-MAND** for the entry of an order dismissing any remaining demands for relief for lack of jurisdiction.

## BACKGROUND

In December 2004, Eliseo Morales García and Maribel Mena Meléndez (the "Debtors") filed a petition under chapter 11 of the Bankruptcy Code.[3] In May 2009, the case was converted to chapter 7, and the trustee was appointed.

The appellants are heirs of the estate of three siblings, Maria Josefa, Maria de las Mercedes, and Jose Antonio González Rodriguez (the "González Estate"). Prior to the bankruptcy filing, twenty-one heirs of the González Estate (including all of the appellants) executed public deeds authorized by Notary Public Olga Shepard de

Mari to sell to the Debtors their respective shares in the González Estate, amounting to 78.54 percent of the total shares.[4] The González Estate was comprised of three parcels of real property in Vega Baja, Puerto Rico (the "Properties"). The González Estate was probated before the CFI and on June 14, 2000, the court entered a judgment which identified the assets and all of the heirs and their respective shares of the González Estate.[5] The Debtors were not identified in the judgment. In May 2002, the CFI ordered that the Properties be sold through public auction, and after extensive litigation,[6] the Properties were sold on December 20, 2004, 11 days after the Debtors' bankruptcy filing. Francisco Almeida and Wanda Cruz Quiles (collectively, "Almeida") paid $3,665,000.00 for the Properties, and the sale proceeds

general jurisdiction." *See* P.R. Laws Ann. tit. 4, § 25a. In Puerto Rico, courts of general jurisdiction handle estate administration, and, therefore, probate matters are assigned to the Puerto Rico Superior Court. *Tartak v. Del Palacio*, Case No. 09–1730(DRD), 2010 WL 3960572, at *6 (D.P.R. Sept. 30, 2010).

3. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rules" shall be to the Federal Rules of Bankruptcy Procedure.

4. It is undisputed that the Debtors paid 10 percent of the agreed upon price as a down payment, and executed unsecured promissory notes for the remaining 90 percent (more than $1,500,000.00). It is also undisputed that the Debtors failed to pay the remaining 90 percent of the purchase price.

5. Some of the heirs of the González Estate filed a Motion for Issuance of Summary and/or Default Judgment against the other heirs, alleging that the only controversy that existed with respect to the González Estate was whether the decision of the majority of the co-heirs to dissolve the hereditary com-

munity of the estate (through the sale of the Properties and the distribution pursuant to Puerto Rico law of the sale proceeds), was binding as to all of the heirs. After identifying all of the heirs and assets of the González Estate, the CFI concluded that because, under Puerto Rico law, none of the heirs were obligated to remain in the hereditary community, the González Estate could be divided and the assets of the estate could be liquidated.

6. In an order dated May 9, 2002, the CFI ordered that the Properties be sold at public auction for a minimum purchase price of $2,000,000.00. The court also determined that the Debtors had "a credit equivalent to 78.54% of the minimum price of the property to be auctioned...." The Properties were subsequently reappraised (as ordered by the CFI in an order dated February 6, 2004), and on August 27, 2004, the CFI again ordered the sale of the Properties through public auction (at an increased minimum purchase price of $3,664,000.00). Upon reconsideration and request for authorization to conduct a private sale, on December 2, 2004, the CFI upheld the May 9, 2002 order and ordered that the Properties be sold at public auction. The González Estate appealed that decision to the Puerto Rico Court of Appeals, Bayamón Judicial Region ("PR Court of Appeals").

were deposited with the CFI.[7]

After their bankruptcy filing, the Debtors sought to stay proceedings in both the CFI and the PR Court of Appeals, and they requested that the CFI declare the public sale to be null and void as it violated the automatic stay. On December 16, 2004, the PR Court of Appeals entered an order stating that it was, "as a cautionary measure to safeguard [its] jurisdiction," staying "any execution of judgment in favor of [the Debtors]" until further court order. On January 13, 2005, the CFI ordered that in light of the Debtors' bankruptcy filing, all proceedings after the filing date, including the sale, were null and void; and the CFI further ordered that the sale proceeds be returned.

Thereafter, on February 9, 2005, the PR Court of Appeals issued a judgment in which it "revoked" the January 13, 2005 decision of the CFI declaring that the sale was null and void and remanded the case to the CFI for a determination of whether the Debtors rightfully owned any shares in the undivided González Estate. In its decision, the PR Court of Appeals noted that the only rightful owners of the undivided González Estate were the heirs already recognized in the judgment of June 14, 2000, unless it was established that one or more of them assigned his or her shares to a third party. The court further noted that "the record [did] not show which, if any, of the heirs recognized in the judgment of June 14, 2000, assigned or sold their rights and proportional shares to a third party," and, therefore, that it was not possible to conclude whether the Debtors had any shares in the undivided González

Estate, particularly in light of the fact that the Debtors still owed more than $1,500,000.00 on the promissory notes. As a result, the PR Court of Appeals "annulled" the part of the CFI's May 9, 2002 order that recognized "a credit equivalent to 78.54 percent of the minimum price of the property to be auctioned," and the part of the CFI's December 2, 2004 order that made a similar reference. The PR Court of Appeals also determined that even if the Debtors were entitled to 78.54 percent of the sale proceeds of the Properties, they had an interest in the proceeds, not the Properties themselves because only the division of the González Estate would confer upon the heirs title over the estate assets. The PR Court of Appeals also stated that the action involved the liquidation of the Properties, and the only parties with standing were the recognized heirs and the creditors of the González Estate (not the creditors of particular heirs).

Thereafter, on April 26, 2005, the Debtors filed an adversary proceeding ("Adv. Pro. No. 05–00102") seeking a determination that the public sale of the Properties during their bankruptcy case violated the automatic stay, an order declaring the sale null and void, and damages for the alleged stay violations.[8] Both Almeida and Real Anon, Inc. moved to dismiss on the ground that the Properties were not property of the Debtors' estate and, therefore, were not subject to the automatic stay.

On October 18, 2007, the bankruptcy court entered an Opinion and Order dismissing Adv. Pro. 05–00102 for failure to state a claim. The bankruptcy court de-

---

7. Four months later, Almeida sold the Properties to Real Anon, Inc. for $5,900,000.00.

8. They filed the adversary complaint (as amended) against Hon. Luisa Colom Garcia (Judge of the CFI), thirty-six of the heirs of the González Estate (including the appel-

lants), Almeida (the party who purchased the Properties at the public auction), Real Anon, Inc. (the corporation that purchased the Properties from Almeida), and RG Premier Bank of Puerto Rico (the banking institution that financed the sales).

termined that owning a share of the undivided González Estate was not equivalent to owning a share of the Properties, and, therefore, the Properties were not property of the Debtors' estate, and the sale did not violate the stay. In making its decision, the bankruptcy court stated:

> As a general rule when a person dies, the person's rights and liabilities are transmitted to the heirs. 31 L.P.R.A. § 2081. "The inheritance includes all the property, rights and obligations of a person which are not extinguished by his death." 31 L.P.R.A. § 2090. If there is more than one heir to the inheritance, a hereditary community is created. *Sociedad Legal de Gananciales v. Registrador de la Propiedad,* 151 D.P.R. 315, 317 (2000) (citations omitted). The object of the hereditary community is the estate as a whole, and not each asset, right or liability in particular. *Kogan v. Registrador,* 125 D.P.R. 636, 650 (1990). Therefore what each heir is entitled to is a right over the estate as a whole ..., not over the particular assets. *Id.* at 652. This is called a hereditary right in the abstract which implies that until a division is ... effectuated, the heirs may not claim a right over any particular asset. *Id.* It is the division of the estate that concludes the hereditary community and only through the division of the estate heirs may become exclusive title holders of its assets. *Id.* at 318; *Gutierrez v. Registrador,* 114 D.P.R. 850, 857 (1983)....

In light of the aforestated, and considering the allegations made in the complaint as true, Plaintiffs own 78.54% of the hereditary participations in the González family hereditary estate but said participations do not grant them a legal or equitable interest in the Subject Properties. Therefore, the Subject Properties are not property of the estate and the public auction held on December 20, 200[4] was not subject to the automatic stay provision of the Bankruptcy Code upon Plaintiffs' bankruptcy filing.

Consequently, the bankruptcy court dismissed the proceeding pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. The Debtors appealed to the Panel, and the Panel transferred the appeal to the U.S. District Court for the District of Puerto Rico. On February 4, 2008, the district court entered an order dismissing the appeal with prejudice.[9]

On October 29, 2010, the trustee filed the subject adversary complaint against 21 of the heirs of the González Estate,[10] including the appellants, alleging that the Debtors had purchased each of the named defendant-heirs' shares in the González Estate, and seeking a determination that the bankruptcy estate owned 78.54 percent of the proceeds from the sale of the Properties, or approximately $2,878,491.00 plus accrued interest. The trustee also requested an order directing the Clerk of the CFI to transfer the funds to the bankruptcy estate.[11]

9. Although there is nothing in the record before us from which we can determine the basis for the district court's dismissal of the appeal, a review of the district court docket indicates that the Debtors voluntarily dismissed the appeal. *See Maher v. Hyde,* 272 F.3d 83, 86 n. 3 (1st Cir.2001); *Kowalski v. Gagne,* 914 F.2d 299, 305 (1st Cir.1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

10. Not all of the heirs of the González Estate were named as defendants in the adversary proceeding, just those whose shares the Debtors allegedly purchased.

11. Although the trustee did not set forth separate counts in her complaint, in her request for relief she sought: (1) a "determination"

On October 3, 2011, Héctor and René Torres Dávila (the "Torres Defendants"), two other defendant-heirs who are not parties to these appeals, filed a motion to dismiss the adversary proceeding alleging that (1) the courts in Puerto Rico had assumed jurisdiction over the controversy which the trustee sought to litigate in the bankruptcy court, (2) before the commencement of the adversary proceeding, the validity of the sale contracts through which the Debtors allegedly acquired 78.54 percent of the shares of the González Estate had been challenged before the CFI and the PR Court of Appeals, and (3) the bankruptcy court lacked subject matter jurisdiction pursuant to *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), because "claims that are keyed only to state law rights or privileges are to be left to the state courts to decide." The Torres Defendants further argued that, because the courts in Puerto Rico had assumed jurisdiction over the validity of the contracts controversy, the adversary proceeding was non-core pursuant to 28 U.S.C. § 157(b)(2), and *Stern* precluded the court from entertaining it since it was purely a matter of state law with no federal claims or issues involved. The trustee opposed the motion to dismiss, asserting that the bankruptcy court had subject matter jurisdiction to entertain this core turnover proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

On March 26, 2012, the bankruptcy court entered an Opinion and Order (the "Order Denying Dismissal") denying the Torres Defendants' motion to dismiss, ruling as follows:

The instant case does not involve a counterclaim nor is it solely based on state law: it involves a request by the Trustee

for the turnover of property that allegedly belongs to the bankruptcy estate under 11 U.S.C. §§ 541 & 542. As discussed below, that is one of the most fundamental core procedures in bankruptcy cases that stems from federal law. The *Stern* doctrine does not impair this court's subject-matter jurisdiction over property of the bankruptcy estate. *Wiscovitch–Rentas v. González Claudio (In re Morales Garcia)*, 471 B.R. 324, 329 (Bankr.D.P.R.2012). The bankruptcy court went on to state that:

In the case at bar, the Torres Defendants allege lack of subject-matter jurisdiction because "the Courts of Puerto Rico have assumed jurisdiction over the controversy which the plaintiff wishes to litigate in Bankruptcy Court".... However, the Torres Defendants have not placed this court in a position to even evaluate which controversies or allegations have been brought before the PR Courts. Moreover, the PR Court of Appeals already ruled that [the bankruptcy] court has "exclusive jurisdiction to determine what is property of the bankruptcy estate". *See* the Opinion & Order issued in Adv. Proc. 05–00102, Docket No. 145, p. 17. This court finds that a turnover action is a fundamental bankruptcy matter that "stems from the bankruptcy itself" and "would necessarily be resolved in the claims allowance process" because it intricately hinges on the proper constitution of the bankruptcy estate. *Stern v. Marshall*, 131 S.Ct. at 2618. As ruled in *Braunstein v. McCabe*, a turnover proceeding "invokes the [bankruptcy] court's most basic equitable powers to gather and manage the property of ... the estate." 571 F.3d [108] at 122 [ (1st Cir.2009) ]. There-

that the Debtors had a 78.54 percent interest in the sale proceeds of the Properties; and (2) an order directing the CFI to turn over 78.54

percent of the sale proceeds to the bankruptcy estate.

fore, this court has subject-matter jurisdiction to entertain the instant core adversary proceeding and can ultimately issue a final determination on its merits in accordance with *Stern v. Marshall. Id.* at 330. The Order Denying Dismissal was not appealed.

On May 3, 2012, the trustee filed a motion for summary judgment. In the motion, the trustee argued that the Debtors duly acquired the defendant-heirs' shares in the González Estate and that the sum of those shares amounted to 78.54 percent of the González Estate. She also averred that the Properties were sold at public auction for $3,665,000.00 and, accordingly, 78.54 percent of the sale proceeds constituted property of the bankruptcy estate. She argued that these facts were undisputed and that she was entitled to judgment as a matter of law.

On May 21, 2012, Appellants María and Manuel filed an opposition to the motion for summary judgment, arguing that the PR Court of Appeals annulled the alleged sales and the deeds whereby the Debtors acquired 78.54 percent of the shares of the González Estate when it ruled as follows:

> Even in the case that [the Debtors] show that they really substitute 78.54% of the heirs, specifying for the record the names and co-share percentages, the auction process does not affect them because from the very beginning what they were entitled to is a proportional share of the auction proceeds since they could never acquire in that manner, nor have they acquired, any concrete share in rem of any of the three properties described. *González Santiago v. González Caruso*, Case No. KLCE200401584 at p. 205, 2005 PR App. LEXIS 385 at *28, 2005 WL 808015 at *11.

The trustee filed a response, asserting that the Debtors paid $1,570,808.89 (part in money, part in promissory notes) to purchase 78.54 percent of the shares in the González Estate from certain heirs, and because they duly purchased those shares pursuant to public deeds, the Debtors owned and could have sold their shares to any person for any price.

Appellants Sandra and Josefa also filed oppositions to the motion for summary judgment, claiming that the PR Court of Appeals annulled and voided the sales and deeds whereby the Debtors purchased their shares in the González Estate, and that the deeds on which the Debtors based their claims were null and void according to Puerto Rico law. The trustee opposed those motions, arguing, among other things, that these parties had never appeared in the proceeding and had not filed an answer to the complaint. She also argued that the bankruptcy court had already determined that the Debtors owned 78.54 percent of the González Estate (citing to the Order Denying Dismissal).

On September 4, 2012, the bankruptcy court held a hearing on the trustee's motion for summary judgment and the oppositions thereto. It is unclear what transpired at that hearing as there is no transcript in the record, but the court's minute entry provided as follows:

> The issue of whether or not the debtors' purchase of the hereditary rights is valid has not been decided by the state court or this court. Trustee granted 45 days to supplement motion for summary judgment and reply to defendants' arguments in dkt # 184 [Torres Defendants' opposition and cross-motion for summary judgment]. Defendants are granted 30 days thereafter to reply.

On October 29, 2012, the trustee filed a supplement to her motion for summary judgment. She argued, among other things, that a valid contract existed between the named defendant-heirs and the

Debtors under Puerto Rico law as the named defendant-heirs consented to sell their shares to the Debtors by executing the deeds, and there was legitimate cause and consideration (being 10 percent of the purchase price and promissory notes for the remaining 90 percent) in those transactions.[12] Thus, the trustee argued, she was entitled to a declaratory judgment ruling that the Debtors owned 78.54 percent of the shares of the González Estate, and because the Properties were converted into money through the public auction, the bankruptcy estate was entitled to 78.54 percent of those proceeds.

On December 14, 2012, the bankruptcy court issued an Opinion and Order granting summary judgment in favor of the trustee. *See Wiscovitch–Rentas v. González Claudio (In re Morales Garcia)*, 484 B.R. 1 (Bankr.D.P.R.2012). In its decision, the bankruptcy court determined that the following facts were uncontested:

1. The González Estate consisted of the Properties.

2. The Debtors acquired from the named defendant-heirs their "respective hereditary shares on each of the ... Properties" by virtue of deeds executed before Notary Public Olga M. Shepard de Marí.

3. On December 2, 2004, the CFI issued an order to sell the Properties at public auction. Pursuant to that order, the Properties were sold at a public auction for $3,665,000.00.

4. The proceeds from the public auction were consigned to the CFI.

5. The Debtors defaulted on payments on the unsecured promissory notes that they gave to the defendant-heirs.

*Id.* at 7–9.

The bankruptcy court then found that, because it was undisputed that the Debtors and twenty-one heirs in the González Estate executed public deeds to sell to Debtors their shares in the González Estate and because the total of those shares amounted to 78.54 percent, the Debtors had duly purchased 78.54 percent of the shares in the González Estate. In making this finding, the bankruptcy court specifically rejected the arguments raised by both sets of appellants that the PR Court of Appeals annulled and voided the sales and deeds in its February 9, 2005 decision. According to the bankruptcy court, the PR Court of Appeals only considered the option agreements[13] entered between the Debtors and certain heirs in the González Estate, and remanded to the CFI to determine whether the Debtors "really acquired an option right over 78.54 percent of the shares and rights of the [Properties], whether they exercised the option in time and whether the necessary consideration for the subsequent sale of the estate shares and rights on the undivided estate took place." Thus, the bankruptcy court ruled that the PR Court of Appeals had not determined that the purchase agreements between the Debtors and twenty-one heirs of the González Estate were null and void.

Based on the foregoing, the bankruptcy court held as follows:

12. Under Puerto Rico law, a valid contract exists between two parties when the following three conditions exist: (1) the consent of the contracting parties; (2) a definite object which may be the subject of the contract; and (3) the cause of the obligation which may be established. *See* Article 1213 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 3391; *see also Bianchi–Montana v. Crucci–Silva*, 720 F.Supp.2d 159, 164 (D.P.R.2010).

13. It is unclear from the record why the PR Court of Appeals made a reference to option agreements and not the public deeds referenced on page 3 above.

[T]his Court finds that the Debtors duly purchased 78.54% of the [shares] of the González Estate and because the Debtors acquired said shares pre-petition, they are now part of the bankruptcy estate pursuant to Section 541 of the Bankruptcy Code. And since the [ ] Properties were sold at public auction and the proceeds are consigned at the PR [Probate Court], the bankruptcy estate is entitled to retrieve the equivalent of 78.54% of those proceeds.

*Id.* at 14. The bankruptcy court then entered summary judgment in favor of the trustee and ordered the Clerk of the CFI to issue a check payable to the trustee in the amount of 78.54 percent of the amount of the consigned proceeds of the public auction.

Thereafter, Appellants Maria and Manuel filed both a motion for reconsideration, which the bankruptcy court denied, and a timely notice of appeal. On January 29, 2013, after the expiration of the appeal period, Appellants Sandra and Josefa filed a motion requesting an extension of time and leave to file a notice of appeal, arguing that that they had not been notified of the judgment despite their appearances in the case. The bankruptcy court granted their motion.

### *APPELLATE JURISDICTION*

■ A bankruptcy appellate panel is "duty-bound" to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)* 226 B.R. 724, 725 (1st Cir. BAP 1998). A panel may hear appeals from "final judgments, orders, and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp. v. Branch (In* *re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998).

### A. Finality

■ "An order granting summary judgment, where no counts remain, is a final order." *DeGiacomo v. Traverse (In re Traverse)*, 485 B.R. 815, 817 (1st Cir. BAP 2013) (citation omitted). Thus, these appeals are from a final order.

### B. Timeliness

■ It is well settled that the time limits established for filing a notice of appeal are "mandatory and jurisdictional." *Yamaha Motor Corp. v. Perry Hollow Mgmt. Co., Inc. (In re Perry Hollow Mgmt. Co., Inc.)*, 297 F.3d 34, 38 (1st Cir.2002) (citations omitted). The Panel does not have jurisdiction over an appeal if the notice of appeal was not timely filed. *See Colomba v. Solomon (In re Colomba)*, 257 B.R. 368, 369 (1st Cir. BAP 2001).

■ Pursuant to Bankruptcy Rules 8001(a) and 8002(a), an appellant must file an appeal within 14 days after the entry of the judgment, order, or decree of the bankruptcy court. Under Bankruptcy Rule 8002(b), however, if *any* party timely files a motion to reconsider, the appeal period is tolled as to *all* parties. *See* Fed. R. Bankr.P. 8002(b) ("If any party makes a timely motion [for reconsideration], the time for appeal for *all* parties runs from the entry of the order disposing of the last such motion outstanding.") (emphasis added). To be timely, a motion for reconsideration must be filed "no later than 14 days after entry of judgment." Fed. R. Bankr.P. 9023.

In this case, the bankruptcy court entered the subject judgment on December 14, 2012. On December 26, 2012, Appellants Maria and Manuel timely filed a motion for reconsideration, which tolled the

appeal period as to all parties. Fed. R. Bankr.P. 8002(b). The bankruptcy court entered an order denying reconsideration on December 27, 2012. As a result, the appeal deadline was January 10, 2013. Appellants Manuel and Maria timely filed their notice of appeal on December 26, 2012.

Appellants Sandra and Josefa did not file a notice of appeal before the January 10, 2013 deadline. Instead, on January 29, 2013, they filed a motion to extend the time to file the notice of appeal, together with a notice of appeal, arguing that their failure to timely file the notice of appeal was due to excusable neglect as they had not been properly notified of the judgment. Pursuant to Bankruptcy Rule 8002(c)(2), a party seeking an extension of the appeal period must file a motion within the appeal period (in this case, by January 10, 2013), except that a bankruptcy court may grant a motion filed within 21 days after the appeal period expires if the movant demonstrates excusable neglect. Fed. R. Bankr.P. 8002(c)(2). Appellants Sandra and Josefa filed their motion to extend within the 21-day "excusable neglect" period, and, in an order dated February 14, 2013, the bankruptcy court granted the motion. The order was not appealed, and it became final.[14] Thus, there are no timeliness issues with respect to Appellants Sandra and Josefa's notice of appeal.

### STANDARD OF REVIEW

■ A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010). The Panel reviews an order granting summary judgment *de novo*. *See*

*Soto–Rios v. Banco Popular de Puerto Rico*, 662 F.3d 112, 115 (1st Cir.2011); *In re Traverse*, 485 B.R. at 817.

### DISCUSSION

As noted above, the bankruptcy court, in granting the trustee's summary judgment motion, did essentially two things: (1) it determined that the Debtors had duly acquired a 78.54 percent share of the González Estate and that, because they purchased that share before the bankruptcy filing, the share constituted property of the bankruptcy estate; and (2) it ordered the Clerk of the CFI to turn over to the trustee 78.54 percent of the consigned proceeds of the sale of the Properties. We conclude that the bankruptcy court erred on the merits in granting summary judgment for turnover under. § 542(a). We further conclude that, insofar as the trustee's complaint is a demand for an order requiring a distribution of assets from a probate estate that are in the jurisdiction and indeed possession of the CFI, acting as a probate court, the matter falls within the probate exception to federal jurisdiction, and the bankruptcy judge erred by exercising jurisdiction over it. We address each issue in turn.

### I. Turnover under § 542(a).

■ A turnover proceeding is one to compel the debtor or a third party to deliver to the trustee property that belongs to the bankruptcy estate. As noted above, turnover proceedings arise under the Bankruptcy Code, specifically under § 542(a). They therefore fall within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference, referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a).

---

14. In an order dated April 5, 2013, the Panel acknowledged that the bankruptcy court's February 14, 2013 order was final and that the trustee could not challenge the timeliness of Appellants Sandra and Josefa's appeal.

Also, by statutory definition, they are core proceedings. *See* 28 U.S.C. § 157(b)(2)(E). They therefore are also among those proceedings as to which a bankruptcy judge is statutorily authorized to enter final judgment. *See* 28 U.S.C. § 157(b)(1).

 Though the bankruptcy judge had authority under 28 U.S.C. § 157(b)(1) to enter a final judgment on the turnover count, we nonetheless find error in the merits of the judgment entered. The obligation of turnover applies only to "property that the trustee may use, sell, or lease under section 363 of this title." 11 U.S.C. § 542(a). The property that a trustee may use, sell, or lease under § 363 is property of the bankruptcy estate. 11 U.S.C. § 363(b)(1) and (c)(1) (permitting trustee to use, sell, or lease "property of the estate"). In relevant part, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Here, as the bankruptcy court correctly determined in another proceeding in this case, because the assets of the probate or "hereditary" estate—first in the form of real property and now in the form of the proceeds thereof—have never been distributed and have remained at all times in the possession of the CFI, they have never ceased to be part of the pro-

bate estate.[15] As of the commencement of the bankruptcy case (and even today), the funds were not property of the Debtors, and therefore they have never become property of their bankruptcy estate. At most, the Debtors owned a right to distribution of a fraction of the hereditary estate; until the funds are distributed, the Debtors and their bankruptcy estate have no property interest in the funds themselves. Therefore, the funds in question are not property of the bankruptcy estate and may not be recovered through § 542(a).

## II. Distribution of the Probate Estate on Other Grounds

This is not to say that the trustee has no right to distribution of the funds, only that the right (if it exists at all) is not in the nature of turnover under § 542(a). The trustee's complaint simply demands that the bankruptcy court order the CFI to distribute to the trustee 78.54 percent of the consigned proceeds of the sale of the Properties. Though we have ruled that the trustee was not entitled to that relief under § 542(a), the trustee may yet be entitled to the requested distribution on other grounds. Insofar as the bankruptcy court's decision was an adjudication of the demand for an order of distribution on a

---

15. Specifically, the bankruptcy judge concluded that the Debtors' ownership of 78.54 percent of the shares in the González Estate would not grant them a legal or equitable interest in the Subject Properties, and therefore the Properties are not property of the bankruptcy estate. The bankruptcy judge based this conclusion on the following analysis of Puerto Rican law, which analysis we adopt:

> If there is more than one heir to the inheritance, a hereditary community is created. *Sociedad Legal de Gananciales v. Registrador de la Propiedad*, 151 D.P.R. 315, 317 (2000) (citations omitted). The object of the hereditary community is the estate as a

whole, and not each asset, right or liability in particular. *Kogan v. Registrador*, 125 D.P.R. 636, 650 (1990). Therefore what each heir is entitled to is a right over the estate as a whole ..., not over the particular assets. *Id.* at 652. This is called a hereditary right in the abstract which implies that until a division is ... effectuated, the heirs may not claim a right over any particular asset. *Id.* It is the division of the estate that concludes the hereditary community and only through the division of the estate heirs may become exclusive title holders of its assets. *Id.* at 318; *Gutierrez v. Registrador*, 114 D.P.R. 850, 857 (1983).

basis other than § 542(a), we conclude that the probate exception to federal jurisdiction deprived the bankruptcy court of subject matter jurisdiction to adjudicate it.

 The probate exception is a judicially created doctrine that limits federal jurisdiction. *Marshall v. Marshall,* 547 U.S. 293, 308, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006); *see also Markham v. Allen,* 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946). The probate exception is the principle that "a federal court has no jurisdiction to probate a will or administer an estate." *Markham,* 326 U.S. at 494, 66 S.Ct. 296. *Markham* is the Supreme Court's "most ... pathmarking pronouncement on the probate exception." *Marshall,* 547 U.S. at 308, 126 S.Ct. 1735. In *Marshall,* the Supreme Court clarified ambiguity in *Markham* and in the scope of the exception:

> We read *Markham's* enigmatic words ... to proscribe "disturb[ing] or affect[ing] the possession of property in the custody of a state court." ... [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction

*Marshall,* 547 U.S. at 311–12, 126 S.Ct. 1735. The probate exception prevents federal courts from exercising in rem jurisdiction over a res when a state court is simultaneously doing the same. *See id.* at 311, 126 S.Ct. 1735; *see also Nickless v. Kessler (In re Berman),* 352 B.R. 533, 543 (Bankr.D.Mass.2006). Therefore, federal courts may not exercise jurisdiction to dispose of property that is in the custody of a state probate court. *See Three Keys, Ltd.*

*v. SR Util. Holding Co.,* 540 F.3d 220, 227 (3d Cir.2008) ("It is clear after *Marshall* that unless a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court, the probate exception does not apply."); *Lefkowitz v. Bank of N.Y.,* 528 F.3d 102, 107 (2d Cir.2007) ("Following *Marshall* we must now hold that so long as a plaintiff is not seeking to have the federal court administer a probate matter or exercise control over a res in the custody of a state court, if jurisdiction otherwise lies, then the federal court may, indeed must, exercise it.").

 Here, the trustee's complaint, in seeking an order requiring the CFI to distribute the funds in its jurisdiction and possession, asks the bankruptcy court to dispose of—or at least endeavor to dispose of—property in the custody of the CFI, serving here as a probate court. The funds in question, the proceeds from sale of the Properties, are in the in rem jurisdiction and custody of the CFI. Under the probate exception, their distribution is the CFI's exclusive preserve. Indeed, only the CFI has comprehensive jurisdiction over all claims against those assets. Though expressing no opinion on Puerto Rican law on the subject, it is hard to imagine how a distribution can or should be made without regard for the extent of the probate estate's assets and the extent of the competing claims with varying priorities. *See Dulce v. Dulce,* 233 F.3d 143, 148 (2d Cir.2000) (the probate exception was not implicated where the federal court would determine the amount of a claim against the probate estate but not "[w]hether the plaintiff's share would actually result in his receipt of money, and how much," matters which "would depend on the probate court's findings as to the extent of the estate's assets and the extent of

the competing claims with varying priorities"). Therefore, to the extent that the trustee's complaint demanded that the bankruptcy court order the CFI to distribute proceeds on a basis other than § 542(a) of the Bankruptcy Code, the complaint fell within the probate exception, and the bankruptcy court erred in adjudicating it.[16]

### CONCLUSION

For the reasons set forth above, we **REVERSE** the bankruptcy court's judgment directing the Clerk of the CFI to turn over the proceeds and **REMAND** for the entry of an order consistent with this opinion, dismissing any remaining demands for relief for lack of jurisdiction.

---

16. Having determined that the trustee was not, in any event, entitled to relief under § 542(a), we deem it unnecessary to determine whether the probate exception removed even a demand under that subsection from the bankruptcy court's jurisdiction.